IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Crim. No. 23-cr-452-3 |
| | ) | |
| TYJUAN MCNEAL | ) | Sentencing: June 17th, 2025 |
| | ) | |
| Defendant. | ) | Judge Amy Berman Jackson |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The defendant, TYJUAN MCNEAL, by and through counsel, respectfully requests that this honorable court sentence Mr. McNeal to a period of 72 months incarceration, which is a sentence sufficient, but not greater than necessary, to punish Mr. McNeal for this crime. He also requests that the court recommend he be designated to FCI Butner Medium II in Butner, North Carolina.

**I. Considerations in Imposition of Sentence**

The Federal sentencing statute, 18 U.S.C. 3553(a), requires that this Court impose a sentence that is "sufficient but not greater than necessary to comply with the purposes of sentencing as set forth in 18 U.S.C. 3553(a)."

In United States v. Booker, 543 U.S. 220 (2005), the U.S. Supreme Court held that the U.S. Sentencing Guidelines (USSG) are advisory only, not mandatory. In Rita v. United States, 551 U.S. 338, 351 (2007), the Supreme Court further explained that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply." The court can no longer presume that a guideline sentence is the appropriate sentence. To do so would be to take a large step in the direction of returning to the pre-Booker regime. United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007).

1

While this Court must still correctly calculate the guideline range, Gall v. United States, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, id. at 51; Nelson v. United States, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under §3553(a). Kimbrough v. United States, 552 U.S. 85, 90 (2007). The Court must "consider all of the §3553(a) factors, make an individualized assessment based on the facts presented" id. at 49-50, and explain how the facts relate to the purposes of sentencing. Id. at 53-60; Pepper v. United States, 131 S. Ct. 1229, 124243 (2011). The Court's overarching duty is to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." Id. at 101; Pepper, 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted)(citing Rita v. United States, 551 U.S. 338, 351 (2007))(district courts may find that the "Guidelines sentence itself fails properly to reflect §3553(a) considerations").

The factors under 18 U.S.C. §3553(a) to be considered in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of section 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; (C) to protect the public

2

from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guidelines range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

## II.    Factual Background and Procedural History

A conspiracy to traffic firearms under 18 U.S.C. §933 (a)(1)(3) requires that two or more persons agreed to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony (as defined in section 932(a)); that the defendant was a party to or a member of that agreement; and that the defendant joined the agreement or conspiracy knowing of its objective to traffic firearms and intending to join together with at least one other alleged conspirator to achieve that objective. In order to prove that a conspiracy existed, the Government must demonstrate "an agreement to commit some other crime beyond the crime constituted by the agreement itself." United States v. Gibbs, 190 F.3d 188, 199 (3d Cir. 1999).

On December 13, 2023, at 3:30 a.m., Mr. McNeal and four others drove to the A&D Pawn Shop in Maryland in two separate vehicles. After another member of the group broke the lock to the A&D Pawn Shop, Mr. McNeal and others went into the A&D Pawn Shop and took the firearms. In total, 34 firearms were taken from the A&D Pawn Shop. After this, the other

members of the group left the scene in a stolen vehicle and Mr. McNeal followed in his own separate vehicle. The group then attempted to sell the firearms and used social media to advertise the sale. The same day, Mr. McNeal communicated with another individual in order to sell six of the firearms. On March 22, 2024, he was arrested in connection to this case.

On March 12, 2025, Mr. McNeal accepted responsibility and pled guilty to one count of the Superseding Indictment, pursuant to a written plea agreement and Rule 11(c)(1)(B). Due to the nature of the conspiracy charge, as a result of pleading guilty to the charge, the entire quantity of firearms is attributable to the group as a whole and is accounted for when determining his Guidelines range.

### III.   Sentencing Factors under 18 USC §3553

#### Nature and Circumstances of the Offense

In December 2023, Mr. McNeal was struggling financially as a single father and was in need of money. With Christmas less than two weeks away, Mr. McNeal felt prompted to act recklessly in a desperate attempt to gain money quickly and easily. Mr. McNeal was not the leader of this conspiracy. His actions came from a place of financial desperation and his goal was to obtain money to buy his nine-year-old son, Zyaire, Christmas presents. He never desired to hurt anyone. Ultimately, Mr. McNeal wanted to show up as a father for Christmas, and remind his son of the fond Christmases they shared when his son's mother was still alive. Mr. McNeal feels remorse for his actions and states he never wanted to let anyone down, most of all his son.

#### History and Characteristics of the Defendant

##### *Full Acceptance of Responsibility*

Mr. McNeal has accepted full responsibility for his role in the offense. He is especially regretful that his family has been devastated as a result of his actions. Every day, he is faced with

4

the reality that his own actions have separated him from his son, his family members, and his community. He and his girlfriend, Taniya Tapp, have a blended family and he treats her children as his own. Every night in jail, he stays up late thinking about his entire family and missing them. Before his arrest, Mr. McNeal's goal was to provide Zyaire with a more stable upbringing than Mr. McNeal had himself. Tragically, Zyaire's mother was murdered in 2021. In the aftermath of this devastating event, Mr. McNeal took on the sole responsibility of raising his son. Zyaire has been through so much in the aftermath of his mother's murder. Now, Mr. McNeal is faced with the reality that his son's life has been uprooted as a result of his own actions. His son currently lives with his maternal grandmother and visits Mr. McNeal regularly.

While in federal custody, Mr. McNeal will be eligible for many Bureau of Prisons programs. He will be eligible for Career Technical Education (CTE) Apprentice and Vocational Training, the Bureau Literacy Program, the Challenge Program (a modified therapeutic community), a job with the Federal Prison Industries (FPI/UNICOR), a Non-Residential Drug Abuse Treatment Program (NRDAP), and the National Parenting From Prison Program.

### *Personal and Family History*

Mr. McNeal was raised by a single mother as his father tragically died when he was just three years old. Having spent the rest of her life as a single mother, she struggled to make ends meet and did the best she could with little to no outside assistance. Those who know Mr. McNeal well state that he had to raise himself from a very young age. He had a single mother who was unemployed for several years before her death from a drug overdose. Throughout his childhood, she struggled to provide bare subsistence for her family and eventually required government assistance.

Far before any child should have to, Mr. McNeal was exposed to violence and crime. In middle school, he was subjected to bullying, physical aggression, and was taunted for having a stutter. He has been stabbed twice and shot twice. He was first "jumped" and stabbed at the age of 13. At this young age, he threatened to commit suicide, leading his mother to call the police. He was committed to the Psychiatric Institute of Washington for three weeks for inpatient mental health treatment. When asked about this particular event in his life, Mr. McNeal could only say that he had "a mental breakdown." Then at the age of 14, he was "jumped" by a gang of adolescent males, who broke his jaw. At the age of 16, he was caught in the crossfire of a shootout and was shot in his left foot. At the age of 18, he was the bystander victim of another shootout where he was shot in his right leg. This was the childhood of Mr. McNeal.

More recently, in October 2024, he was stabbed while in custody at the DC Jail. These traumatic experiences coupled with his unstable upbringing, ultimately led to his depression and PTSD. Mr. McNeal suffers from ADHD and Bipolar Disorder. He was also diagnosed with mood disorder of manic type by the Department of Corrections.

Despite his past mistakes, Mr. McNeal's deep-rooted love for his family and friends makes him fully capable of reform. Many of his close friends and relatives have mentioned the deep remorse and sense of responsibility Mr. McNeal has shown for this crime. He is strongly motivated to make better choices and become a productive member of society so that he can support his family and be there for his children. All of his loved ones describe him as their rock and strength.

Mr. McNeal wanted his son to have a good Christmas and enjoy the holiday as Zyaire did when his mother was still alive. Mr. McNeal has explained that his son was doing well in school, and he wanted to reward his son for getting good grades. While in jail, Mr. McNeal received a

6

letter from Zyaire's teacher stating that he was not doing well in school. Mr. McNeal and Zyaire had a visit where Mr. McNeal counseled and talked to Zyaire. After this visit, Mr. McNeal received another letter from the same teacher thanking him for talking with Zyaire. The teacher had noticed a marked improvement in Zyaire's behavior and wanted Mr. McNeal to know that he is a positive role model in his son's life. He has mentioned that he is currently missing his son's first season of playing sports. He is heartbroken that he will be absent for pivotal moments of his son's childhood like birthdays, school dances, and graduations, as his own father was absent for his.

As noted in the Pre-Sentence Report under *Employment Records* (§103- §108) and *Financial Condition: Ability to Pay* (§109-§115), Mr. McNeal was unemployed for the two years leading up to his arrest. This unemployment was, in part, due to having full custody of his young son, Zyaire, and was also due to his difficulty finding gainful employment as a result of his criminal record. Mr. McNeal's primary means of supporting himself and his son was through government assistance and through working odd jobs whenever he found an opportunity, such as cutting the grass for his neighbors and working at his uncle's detailing business. As for his future employment goals, Mr. McNeal is interested in pursuing a forklift-certified position in a warehouse, and perhaps one day starting his own clothing line.

### *Deterrence*

Mr. McNeal was on parole at the time of the offense at hand. He was set to be discharged off of parole in August 2024 but was arrested for the present offense in March 2024. He has yet to go before the parole board for this violation, which will almost certainly result in revocation of his parole and an additional sentence of incarceration. This court's imposition of a sentence of 72 months of incarceration, when coupled with the very near certainty that an additional consecutive

7

period of incarceration will be imposed by the parole board, will serve to sufficiently deter Mr. McNeal from engaging in unlawful criminal conduct in his future.

### IV.     Adjustments To The Sentencing Guidelines Calculation

This conviction is for Conspiracy to Commit Firearms Trafficking, a Class C felony that carries a maximum penalty of 15 years of imprisonment; a fine of up to $250,000 pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than three years pursuant to 18 U.S.C. 3583(b)(2), and payment of a special assessment fee of $100.

The Base Offense Level for Conspiracy to Commit Firearms Trafficking is **20**. Mr. McNeal's Criminal History Category is **III** and his Guidelines level is **34**. The Guidelines Range for this conviction is **188** months to **235** months. However, because the statutory maximum is 15 years, the range is capped at 180 months or 15 years. Pursuant to U.S.S.G. § 5E1.2, should the court impose a fine, at Total Offense Level 34, the estimated applicable fine range is **$40,000** to **$400,000**. Mr. McNeal does not have significant assets and would likely be limited to installment payments for any fines imposed by the court.

The government has agreed to cap its allocution to a sentence in the range of **96** months to **120** months. Defense counsel respectfully requests that the court impose a sentence of **72 months of incarceration**. This sentence will serve to deter Mr. McNeal and others from future criminal conduct and will serve the purpose of ensuring respect for the laws of our country. This sentence will also account for the fact that, due to his untimely parole violation, Mr. McNeal will almost certainly be sentenced to an additional consecutive period of incarceration following the completion of his sentence for the offense at hand. The parole board has yet to meet to determine the outcome of Mr. McNeal's parole violation. For this reason, Defense counsel asks this court to consider granting the defense's requested sentence in light of the looming parole revocation

hearing on the horizon. Defense counsel also respectfully requests this court to waive the imposition of a fine in Mr. McNeal's case, as he has limited assets and is currently incarcerated with no monthly income and lacks funds.

### *Avoiding Unwarranted Sentencing Disparity on a National Scale*

Defense counsel reserves this matter for the time of sentencing.

### IV. Conclusion

For all of the foregoing reasons, defense counsel respectfully requests that this honorable court impose a sentence of **72** months of incarceration and a waiver of any requested fine. Such a sentence will serve to deter Mr. McNeal and others from engaging in future criminal conspiracies and will serve the purpose of ensuring respect for the laws of our country.

Respectfully Submitted,

_____/s/_____
Todd S. Baldwin, Esq.
Attorney for Tyjuan McNeal
DC Bar # 439947
503 D St., Suite #120, NW
Washington, D.C. 20001
(703) 599-4449 (m)

### CERTIFICATE OF SERVICE

I certify that on June 10th, 2025, I electronically sent a copy of the above Bond Review Motion to the following:

Shehzad Akhtar, AUSA
*Attorney for Government*
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
(202) 252-7498 (o)
Shehzad.Akhtar@usdoj.gov

Dwight Crawley
*Attorney for Juwon Anderson*

Law Office of Dwight Crawley
1300 I Street, NW, Suite 400c
Washington, D.C. 20005
202-580-9794
888-804-1806 (fax)
vadclawyer@gmail.com

Brian McDaniel
*Attorney for Vincent Alston*
McDaniel Law Group, PLLC
1001 L Street, SE
Washington, DC 20003
202 331-0793
202 331-7004 (fax)
bkmassociates@aol.com

A. Eduardo Balarezo
*Attorney for Cy-Juan Hemsley*
BALAREZO LAW
400 Seventh Street, NW
Suite 306
Washington, DC 20004
202 639-0999
202 639-0899 (fax)
filings@balarezolaw.com

Chris Michael Davis
*Attorney for Niquan Odumn*
DAVIS & DAVIS
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202 234-7300
202 830-0056 (fax)
emdavis@gmail.com

 /s/
 Todd S. Baldwin, Esq.